## IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI
## AT JOPLIN

L. THOMAS ELLISTON )
and RUTH I. ELLISTON, )
)
        Plaintiffs, )
)
vs. )   Case No. 10AO-CC00448
)
THE DOE RUN RESOURCES )
CORPORATION, a corporation, )
)
        Defendant. )

FILED
LINDA WILLIAMS - CLERK
DEC 2 0 2010
JASPER COUNTY CIRCUIT CLERK
JOPLIN, MISSOURI

## PETITION

COME NOW the Plaintiffs and for their cause of action against Defendant respectfully state and show the Court the following:

### GENERAL ALLEGATIONS

1.    That Plaintiffs L. Thomas Elliston and Ruth I. Elliston are residents of Jasper County, Missouri, and own real estate hereinafter mentioned located in Jasper County, Missouri.

2.    That the Defendant is a corporation that may be served by serving CT Corporation System, 120 S. Central Ave., Clayton, Missouri, 63105.

3.    That Defendant entered into a Consent Decree with the United States of America and the State of Missouri in Civil Action Number 08-5114-CV-SW-JCE in the United States District Court for the Western District of Missouri wherein the Defendant agreed to clean up certain real estate, including the real estate owned by Plaintiffs mentioned herein, to certain EPA standards.

4.    That the Consent Decree requires Defendant to obtain an Access Agreement with Plaintiffs concerning the cleanup that is to take place on the real estate owned by Plaintiffs.


EXHIBIT A

5. That John E. Carter, P.E., an employee and agent of Defendant, was made "Project Manager" by Defendant and assigned the task of negotiating and obtaining an Access Agreement with Plaintiffs. Mr. Carter was acting within the scope and course of his employment, agency, and authority with Defendant at all times mentioned herein. Mr. Carter proceeded to counsel and negotiate with Plaintiffs. Mr. Carter represented to Plaintiffs, among other things:

   a. That the chat remaining on the property would be consolidated at a location designated by Plaintiffs and be left available for future use or sell by Plaintiffs.

   b. That all other mining waste, tailings, and debris would be hauled off of the property to some subsidence pit off of the property.

   c. That a subsidence pit on the property where plaintiffs had spent hundred of dollars stocking and maintaining fish so that the subsidence pit could be used as a private, recreational area for grandchildren would be left untouched.

   d. That after all of the mining waste, tailings, and mining debris was removed, a clay base and topsoil would be hauled in from offsite.

   e. That the topsoil would be limed, fertilized, and revegetated with a grass to be chosen by Plaintiffs.

6. Upon Plaintiffs exhibiting some skepticism to the representations made by Mr. Carter, Mr. Carter represented to Plaintiffs that he and other employees and agents of Defendant were professional engineers with experience, skill and knowledge and when the cleanup was finished Mr. Carter represented that the real estate would:

   a. Be back to as good or better as it was before there was any mining.

  b.  Appear in such a manner that you would not know mining had taken place there and it would "look like the other pastures" of Plaintiffs.

  c.  That the area would be returned to its original elevation, grade, and drainage.

  d.  That the area would be cleaned enough for plaintiffs to have a "child daycare facility" if Plaintiffs so desired.

  7.  In the spirit of cooperation and to expedite the cleanup, Plaintiffs then agreed that the subsidence pit where Plaintiffs had stocked and maintained fish could be used. Mr. Carter then represented to Plaintiffs that after the subsidence pit was used it would be necessary to have a "capping" of the mining waste, debris and contaminated soil deposited in the pit and that it would be necessary for years, if not "forever," for the Defendant to come back on the property to check on the capping and status of the subsidence pit.

  8.  That as a result of the representations made by Defendant, Plaintiffs and Defendant agreed, among other things, that Defendant would:

  a.  Consolidate for subsequent use the chat on the property.

  b.  Evacuate and remove the tailings, mining waste, contaminated soil, and mining debris and that it would be subaqueous disposed of in the subsidence pit on Plaintiffs' property until that pit was full and then other subsidence pits, on or off of the property, would be used.

  c.  That any subsidence pit used on the property would have to be filled and capped.

  d.  That Plaintiffs would allow some, but not all, of the trees on the property to be destroyed and removed. Plaintiff would designate the trees that were not to be destroyed.

e. That the property would be restored to its original elevation, grade, and drainage and then limed, fertilized, and revegetated.

9. To memorialize the Agreement between Plaintiffs and Defendant an Access Agreement, Exhibit AA attached hereto, was executed by the parties on or about August 17, 2009. That thereafter, to correct a mutual mistake of the parties concerning the legal description of the property, an amendment to the Access Agreement was executed in May and June, 2010, that amendment being attached hereto as Exhibit BB.

10. That on or about November 1, 2010, Defendant informed Plaintiffs, in writing by means of a "Preliminary Design Document" and by John Carter in person that it would not honor its representations and agreement in, among others, the following ways:

a. That it would not consolidate for subsequent use by Plaintiffs the chat located on the property, that the chat would, in fact, be destroyed by placing it in the subsidence pit until the subsidence pit was full, and then the remaining chat would be placed in a repository located on Plaintiffs' property.

b. That all vegetation, including trees, would be "cleared and either burned or chipped" and the "remains of the burned or chipped materials will be placed in a repository located" on Plaintiffs' property.

c. That the mining debris and concrete structures would not be removed from Plaintiffs' property but would also be placed in a repository located on Plaintiffs' property.

d. That after the subsidence pit was filled, the remainder of the chat, tailings, mining waste, contaminated soil, and mining debris would all be placed on a repository located on Plaintiffs' property.

e. That on property not owned by Plaintiffs, but located to the north of Plaintiffs' property, the vegetation, including trees, would be either burned or chipped and "the remains of the burned or chipped material will be placed in a repository located" on Plaintiffs' property.

f. That "any unsuitable materials encountered, including debris and demolition debris, from the former mining and milling operation" on the property located north of Plaintiffs' property would also be taken to a repository located on Plaintiffs' property.

g. That from real estate located to the south of plaintiffs' property, and not owned by Plaintiffs, there would be clearing of vegetation with "the remains of the burned or chipped material will be placed in a repository located" on Plaintiffs' property.

h. That "as part of the clearing and grubbing activities, any unsuitable material encountered, including debris and other demolition debris, from the former mining and milling operation, will be taken to a repository" on Plaintiffs' property.

i. That there would be "stripping activities" on the property south of Plaintiffs' property and that all of the stripped materials would be subaqueously disposed of in a subsidence pit located on Plaintiffs' property and "if the subsidence pit is filled during the completion of onsite activities, materials will be placed in a repository located" on Plaintiffs' property.

j. That a certain amount of Plaintiffs' property will not be limed, fertilized, and revegetated with a grass of Plaintiffs' choosing but instead "will be covered with a minimum of twelve inches of rocks."

k. That the property would not be returned to its original, before mining, elevation, grade, and drainage.

11. It is estimated that the repository now planned by Defendant to be on Plaintiffs' properety would be at least the size of a football field and from 50 to 70 feet above the before mining elevation.

## COUNT I
## EQUITABLE RESCISSION

COME NOW the Plaintiffs and for this cause of action against Defendant state:

12. That they incorporate by reference as fully as if set out herein paragraphs one through eleven of the General Allegations above.

13. That the representations made by Defendant prior to entering Exhibit AA are some or all false.

14. That the representations made by Defendant were material in Plaintiffs agreeing to the Access Agreement.

15. That the Defendant knew that the representations were false, or Defendant was unaware as to the truth or falsity of the representations.

16. That the Defendant intended for Plaintiffs to rely on the representations and enter into the Access Agreement.

17. That Plaintiffs were not aware that the representations made by Defendant were false at the time Plaintiffs entered into the Access Agreement.

18. That Plaintiffs relied on the representations being true before entering into the Access Agreement.

19. That Plaintiffs had a right to rely on the representations made by Defendant.

WHEREFORE, Plaintiffs pray that the Court enter its order declaring and adjudging that the Access Agreement, and the Amendment thereto, are rescinded and null, void, and of no effect; for Plaintiffs' cost herein; and for such other and further orders as the Court may deem just and proper.

## COUNT II
## SPECIFIC PERFORMANCE

COME NOW the Plaintiffs and for this cause of action against Defendant state:

20. That they incorporate by reference as fully as if set out herein paragraphs one through eleven of the General Allegations above.

21. That on or about September 30, 2004, the United States Environmental Protection Agency, in accordance with applicable laws and regulations, selected a remedy, after considering several alternatives, of removal and disposal of mining waste and matter in subsidence pits. Specifically, the Director, Superfund Division, U.S. EPA, Region 7, stated in writing in a Declaration - Record of Decision that:

"The major components of the selected remedy are:

- Removal of mine/mill wastes, contaminated soil, and selected stream sediments

- Subaqueous disposal of excavated source material in mine subsidence pits
- Recontouring and revegetating excavated areas
- Plugging of selected mine shafts and surface water diversion from mine openings
- A monitoring program for assessing the effect of cleanup on Site streams
- Continuation of the Health Education Program established under OU 2/3
- Institutional controls to regulate future residential development in contaminated areas and the use of the disposal areas"

22. The Record of Decision which is part of the Consent Decree entered into by Defendant provides that excavation and removal to subsidence pits is the remedy but "Where wastes are remotely located from disposal pits, or where removal of waste from deep depressions would result in excessively deep evacuations and water ponding, capping of waste with simple soil coverage will be used to encapsulate the waste in place." (Emphasis added.)

23. The Consent Decree, in the Record of Decision, also acknowledges local location of a subsidence pit in a Superfund Designated Area and that "Due to the size of the pit, however, there is not enough mill waste or overburden in the Thorns (sic) DA [designated area] to completely fill the Wild Goose open pit TH12." That pit is less than four miles from Plaintiffs' property.

24. There also exists subsidence pits, located within the same Designated Area as Plaintiffs' property, that are less than a mile from Plaintiffs' property.

25. The removal on Plaintiffs' property would not result in "excessively deep evacuations and water ponding."

26. That Defendant is capable of honoring, executing, and completing its agreement with Plaintiffs and should be ordered to do so.

WHEREFORE, Plaintiffs pray that the Court enter its order directing Defendant to specifically perform the agreement it made with Plaintiffs, including but not limited to:

a. Consolidate for subsequent use by Plaintiffs the chat on the property in an area designated as "chat consolidation area" in the Access Agreement.

b. Evacuate, remove, and dispose of the other source material, sediments, contaminated soil, and mining structures in subsidence pits.

c. Recontour and revegetate the evacuated areas to their before mining elevation, grade, and drainage.

d. Not to bring other mining waste and debris onto Plaintiffs' property.

e. Not to create a repository on Plaintiffs' property.

f. To destroy and remove only those trees so designated by plaintiffs.

for Plaintiffs' cost herein; and for such other and further orders as the Court may deem just and proper.

Respectfully Submitted By
Elliston Law Offices

By:
L. Thomas Elliston # 21477
1601 S. Madison
Webb City, MO 64870
417-673-2405
417-673-2406 FAX

## ACCESS AGREEMENT

(1) <u>Parties</u>. The parties to this Agreement are The Doe Run Resources Corporation ("Doe Run") and L. Thomas and Ruth I. Elliston ("Landowners").

(2) <u>Purposes</u>. Landowners are the owners of certain real estate ("the Parcel") in Jasper County, Missouri, that is within the Oronogo-Duenweg Mining Belt Superfund Site. The United States Environmental Protection Agency has determined in a Record of Decision dated September 30, 2004 ("the ROD") that a Remedial Design and Remedial Action will be implemented in connection with Operable Unit 1 at the Oronogo-Duenweg Mining Belt Site. A portion of the Remedial Action to be performed relates to the Parcel. Doe Run proposes to perform the Remedial Design and the Remedial Action at the Parcel. Landowners desire to grant the access necessary for these purposes. This Agreement sets out the terms on which Landowners grants that access to Doe Run and others whose presence on the Parcel is necessary to complete the Remedial Action.

(3) <u>The Parcel</u>. The parcel owned by Landowners that is affected by this Access Agreement ("the Parcel") is a portion of the Isherwood Mine Parcel. Its legal description is as follows: SW ¼, NW ¼, Sec. 12, Township 33 N., Range. 34 W. and W ½, SE ¼, NW ¼, Sec. 12, Township. 33 North., R. 34 W., in Jasper County, Missouri.

(4) <u>Remedial Action</u>. The remedial action that is to be implemented at the Parcel ("the Remedial Action") shall include some or all of the following:

- Excavation and removal, consolidation for subsequent use, or capping of Source Material, contaminated soils and selected stream sediments exceeding Remedial Action Levels.
- Subaqueous disposal of excavated Source Material and sediments in mine pits or subsidences.
- Re-contouring and re-vegetating excavated areas.
- Plugging of selected mine shafts and surface water diversion from mine openings.
- A monitoring program for assessing the effect of cleanup on Site streams.
- Institutional controls to protect the remedy and regulate future development.

The Remedial Action are more precisely defined by and more fully set out in the ROD, which controls in all respects in defining the Remedial Action.

(5) <u>Access Granted</u>. Under the conditions herein set forth, Landowners hereby grant access to the Parcel for all purposes necessary to performance of the Remedial Action at the Parcel, including design of the Remedial Action, construction and implementation of the Remedial Action, and any and all necessary operation and maintenance requirements that will exist following construction of the Remedial Action. This right of access includes the right to perform work consistent with that described in this Agreement, to inspect, monitor and test conditions at the Parcel (including but not limited to the taking of environmental samples), and to address previously unknown conditions or circumstances found at the Parcel.

1482310.02

Exhibit "AA"

(6) _Persons to Whom Access is Granted._ The access granted by this Agreement runs in favor of Doe Run and its officers, contractors, agents and employees whose presence on the site is necessary for performance of the remedial design and remedial action. Access is also granted to those third parties whose presence at the site is necessary to the design and implementation of the Remedial Design including employees and contractors of the United States Environmental Protection Agency, the United States Department of the Interior and the State of Missouri.

(7) _The Consent Decree_ Doe Run has negotiated a consent decree (an agreement subject to approval and entry as a court judgment) with the United States that will govern the performance of the Remedial Action at the Parcel. That Consent Decree was entered by the United States District Court for the Western District of Missouri on March 26, 2009 and so is now effective.

(8) _Undertakings of Doe Run._

(a) To the extent practicable, the parties to whom right-of-access is granted under this Agreement shall provide advance notice to Landowners of their intended presence on the Parcel and will take all reasonable steps possible to minimize any inconvenience to Landowners in connection with their exercise of this right of access.

(b) Doe Run shall finish the entranceway located to the West of the present entranceway by removing fencing as necessary and installing a twenty foot entranceway with two ten-foot gates welded securely on four-inch heavy walled pipe securely placed in the ground for fence/gate posts. This entranceway will be used at all possible times and will be the exclusive entranceway for trucks and heavy equipment. The entranceway to be finished is marked on Exhibit A attached hereto.

(c) As part of the remedial action, Doe Run shall consider all concrete structures, except what is part of a hay barn, as mining waste and remove them from the Parcel, unless specifically requested in writing by Landowners to leave the specific concrete.

(d) Doe Run shall not remove the chat from the roads on the Parcel where indicated by Landowners.

(e) Doe Run shall gather and consolidate the chat located on the Parcel to an area to the North and East of the hay barn existing on the Parcel, as marked on Exhibit A.

(f) It is understood that the Landowners raise beef cattle and frequently utilize the Parcel for grazing by the cattle. Landowners shall make a reasonable effort to keep the cattle off the Parcel while there is active work being conducted by Doe Run. However, Doe Run at all times shall keep adequate fences on the Parcel and repair or replace any fences that might be damaged or otherwise deemed inadequate by the remedial action.

2

(g) Doe Run acknowledges that Landowners, after the remedial action is taken, will continue to use the Parcel in connection with their cattle operation. Dividing the Parcel into paddocks will facilitate the establishment and maintenance by Doe Run, including periodic burning, of the warm season grass that is to be used in the re-vegetation. It is the intent of Landowners to place a waterline across the re-vegetated Parcel and divide it into five paddocks, each with a water source, all as indicated on Exhibit B attached hereto. To do so will require approximately 6,200 feet of new fencing consisting of 6-1/2 foot, 1.33 lb., steel fence posts spaced approximately ten feet apart with seven strands of barbed wire and two 42-inch stays between each post. Pipe will be utilized for corner posts and gate posts along with weld on pipe gates. A general, not to scale, drawing of the proposed paddocks is attached hereto as Exhibit B. Doe Run will pay Landowners up to $1.50 per lineal foot for all such fencing constructed by Landowners, up to a maximum of 6,200 feet.

(h) Restoration and re-vegetation of the total property shown on Exhibit B following construction and removal shall be in accordance with the Record of Decision. Specifically Doe Run shall:

(i) restore and maintain for the length of time required by the Consent Decree at a fertility level for phosphorus, potassium, calcium, and magnesium that is in the high to very high rating categories as determined by the University of Missouri Soil and Plant Testing Laboratory soil tests.

(ii) restore and maintain the Ph of the land at the optimum level for the warm season grass that is being used for restoration. Although there is documentation indicating that there will be a credit for using 12.t tons of lime per acre, Doe Run acknowledges that not all tons of lime are equal. Doe Run shall use the lime necessary, when conducting the effective neutralizing material as guaranteed in the lime, to bring and maintain the soil at the optimum level for the native grass to be utilized.

(i) Doe Run may possibly use the pits labeled on Exhibit as A, as "Possible Fill Pit" in this matter. If so, Doe Run shall repair the damages to the pasture caused by utilizing these pits.

(j) Landowner will allow some of their trees to be destroyed and removed form the Parcel. However, Doe Run shall do all possible to maintain trees so that each paddock illustrated on Exhibit B will have shade for Landowners' cattle. Doe Run shall in the Site-Specific Work Plan detail all of the efforts used to protect trees.

(k) All work shall be performed under this Access Agreement shall be carried out in a workman like manner, and in compliance with the Record of decision and the Consent Decree.

3

(9) <u>Authorization</u>. By their signatures to this Agreement, Landowners represent that they are in fact owners of the Parcel and are authorized by law to grant access to the Parcel in accordance with this Agreement.

(10) <u>Transfer of Interest</u>. Landowners agree that Landowners will provide a copy of this Agreement to any person or person to whom an ownership interest in the Parcel may be granted. It is the intention of the Parties that the right of access granted by this Agreement will be binding on the parties, their successors in interest, agents, employees and assigns.

(11) <u>Termination</u>. The access rights granted under this Agreement will terminate whenever Doe Run determines that it is no longer necessary to enter on the Parcel for the purposes set out in Paragraph (6) of this Agreement, which shall not be prior to the termination of any operation and maintenance obligation of Doe Run under the Record of Decision and consent decree. Landowners have no unilateral right to terminate or revoke this Agreement, other than for a material failure of Doe Run to perform its undertakings in this Agreement.

(12) <u>Notices</u>. All notices between the parties shall be sent by registered or certified mail or by Federal Express or other private carrier and shall be effective upon receipt. They shall be addressed as follows:

To Landowners:

    Mr. and Mrs. Thomas Elliston
    29412 Hunter Road
    Carl Junction, MO 64834
    417-649-7567

To Doe Run:

The Doe Run Resources Corporation
Attention: Vice-President – Law
1801 Park 270 Drive, Suite 300
Saint Louis, Missouri 63146

_____
Landowner

_____
Landowner


THE DOE RUN RESOURCES CORPORATION

By: _____
Authorized Representative

DATE: 8-17-09

# Elliston's





## AMENDMENT TO ACCESS AGREEMENT

WHEREAS, the Doe Run Resources Corporation ("Doe Run") and L. Thomas Elliston and Ruth I. Elliston ("Landowners") entered into an Access Agreement dated August 17, 2009, and

WHEREAS, there was mutual mistake in the Agreement in that the wrong legal description was set forth, and

WHEREAS, the parties desire to correct that mistaken legal description,

NOW THEREFORE, the parties amend the Access Agreement between the parties dated August 17, 2009, as follows:

1. Paragraph (3) of that Agreement is deleted in total; and

2. The Access Agreement is amended by adding the following paragraph (3)

   (3) <u>The Parcel</u>. The parcel that is owned by Landowners that is affected by this Access Agreement ("the Parcel") is a portion of the Isherwood Mine Parcel. Its legal description is as follows:

   All that part of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of Section 11, Township 28, Range 34, in Jasper County, Missouri, lying East of Smithfield and lying South of the Railroad.

   AND

   All of the South Half of the Northwest Quarter of Section 12, Township 28, Range 34, Except the right-of-way of the St. Louis and San Francisco Railway, and Except that part lying North of St. Louis and San Francisco Railway, all in Jasper County, Missouri.

3. The parties agree that all of the rights, duties, privileges, and obligations set forth in the Access Agreement remain unchanged.

Exhibit "BB"

IN WITNESS WHEREOF, the parties hereto have set their hands this _____ day of May, 2010.

_____
Landowner - L. Thomas Elliston  5-14-10

_____
Landowner - Ruth I. Elliston

THE DOE RUN RESOURCES CORPORATION

By: _____
Authorized Representative  6-15-10

 **CT Corporation**

**Service of Process Transmittal**
03/11/2011
CT Log Number 518171769

TO: Louis J Marucheau, Vice President/Legal
The Doe Run Resources Corporation
Suite 300, 1801 Park 270 Drive
St. Louis, MO 63146-

RE: **Process Served in Missouri**

FOR: The Doe Run Resources Corporation (Domestic State: NY)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| TITLE OF ACTION: | L. Thomas Elliston and Ruth Elliston, Pltfs. vs. The Doe Run Resources Corporation, etc., Dft. |
| DOCUMENT(S) SERVED: | Summons, Petition, Exhibit(s) |
| COURT/AGENCY: | Jasper County Circuit Court, MO<br>Case # 10-AO-CC00448 |
| NATURE OF ACTION: | Petition requiring defendants to specifically perform the agreement it made with the plaintiff |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Clayton, MO |
| DATE AND HOUR OF SERVICE: | By Process Server on 03/11/2011 at 08:05 |
| JURISDICTION SERVED: | Missouri |
| APPEARANCE OR ANSWER DUE: | Within 30 days after service, exclusive of the day of service |
| ATTORNEY(S) / SENDER(S): | L. Thomas Elliston<br>Elliston Law Offices<br>1601 S Madison<br>Webb City, MO 64870-3231<br>417-673-2405 |
| ACTION ITEMS: | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 794526782418<br>Image SOP<br>Email Notification, Louis J Marucheau lmarucheau@doerun.com<br>Email Notification, Jennifer Kaufman jkaufman@doerun.com<br>CC Recipient(s)<br>Dennis Sadlowski, General Counsel, via Regular Mail |
| SIGNED:<br>PER:<br>ADDRESS:<br><br>TELEPHONE: | C T Corporation System<br>Meghan Saffell<br>120 South Central Avenue<br>Suite 400<br>Clayton, MO 63105<br>314-863-5545 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 Serve



# IN THE 29TH JUDICIAL CIRCUIT COURT, JASPER COUNTY, MISSOURI

| Judge or Division: DAVID C DALLY | Case Number: 10AO-CC00448 |
|---|---|
| Plaintiff/Petitioner: L THOMAS ELLISTON vs. | Plaintiff's/Petitioner's Attorney/Address L THOMAS ELLISTON 1601 S MADISON WEBB CITY, MO 64870-3231 |
| Defendant/Respondent: THE DOE RUN RESOURCES CORP | Court Address: 601 S. Pearl JOPLIN, MO 64801 |
| Nature of Suit: CC Specific Performance | |

FILED
LINDA WILLIAMS-CLERK
FEB 23 2011
JASPER COUNTY CIRCUIT CLERK
JOPLIN, MISSOURI
(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: THE DOE RUN RESOURCES CORP
Alias:
REG AGT: CT CORPORATION SYSTEM
120 S CENTRAL AVE
CLAYTON, MO 63105

COURT SEAL OF
JASPER COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

Linda Williams, Circuit Clerk

_____February 23, 2011_____          _____
           Date                              Deputy Clerk

Further Information:

### Sheriff's or Server's Return
Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____         _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____       _____
                            Date                Notary Public

Sheriff's Fees
Summons           $_____
Non Est           $_____
Sheriff's Deputy Salary
Supplemental Surcharge  $  10.00
Mileage           $_____ (____ miles @ $____ per mile)
Total             $_____

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (SMCC) For Court Use Only: Document Id # 11-SMCC-124    1 of 1    Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo